Filed 3/23/21  P. v. Guzman CA2/6
See dissenting opinion

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>OCTAVIO LOPEZ GUZMAN, SR.,<br><br>    Defendant and Appellant. | 2d Crim. No. B297704<br>(Super. Ct. No. 18CR08571)<br>(Santa Barbara County) |

Octavio Lopez Guzman, Sr., appeals from the judgment entered after a jury convicted him of resisting an executive officer (Pen. Code,[1] § 69).  In a bifurcated proceeding, the trial court found true an allegation that appellant had suffered a prior strike conviction (§§ 667, subds. (b)-(i), 1170.12, subds. (a)-(d)). Appellant was sentenced to four years in state prison.

---

[1] Unless otherwise stated, all statutory references are to the Penal Code.

Appellant raises claims of insufficient evidence and instructional error. He also asks us to review the sealed records of the in camera proceedings on his *Pitchess*[2] motion.

We reject appellant's claim that the evidence is insufficient to support his conviction. We agree, however, with his assertion that the court violated its sua sponte duty to instruct the jury on the lesser included offense of simple assault (§ 240). We also agree with appellant that the error is prejudicial. Accordingly, we conditionally reverse the judgment. (See *People v. Hayes* (2006) 142 Cal.App.4th 175, 184 (*Hayes*); *People v. Brown* (2016) 245 Cal.App.4th 140, 166 (*Brown*).)[3]

## STATEMENT OF FACTS

On the afternoon of September 3, 2018, Santa Maria Police Officer Ruben Peinado was on patrol when he observed appellant riding a bicycle on the sidewalk, in violation of Santa Maria Municipal Code sections 7-10.08 and 7-10.18, and Vehicle Code sections 21200 and 21663. Officer Peinado activated his overhead lights, got out of his vehicle, and approached appellant. The officer told appellant that he had stopped him for riding his bicycle on the sidewalk. Appellant replied, "'That's bullshit man.

---

[2] *Pitchess v. Superior Court* (1974) 11 Cal.3d 531 (*Pitchess*).

[3] In light of our conclusion, we need not address appellant's claims (1) that the matter must be remanded for a hearing on his ability to pay the assessments and fines imposed against him, as contemplated in *People v. Dueñas* (2019) 30 Cal.App.5th 1157, and (2) that the abstract of judgment must be corrected to accurately reflect his sentence. In the event of a possible retrial on the section 69 charge, we shall address appellant's remaining claims.

What the fuck kind of shit is that?'" Officer Peinado asked appellant if he was on probation or parole, and appellant replied that he was on probation.

Officer Peinado tapped appellant in the small of the back and said, "'Hands back here.'" The officer did so because appellant was agitated, the officer could not see both of appellant's hands, and appellant appeared to be looking around for an escape route. Instead of complying with the officer's order, appellant "threw his hands up in the air." Officer Peinado said, "'Hey, don't put your hands up. Don't be raising your hands.'" The officer grabbed appellant's left wrist,[4] and appellant put his right hand inside his right pants pocket. Officer Peinado told appellant not to reach for his pocket and feared that he was trying to retrieve a weapon. Appellant "continued to keep reaching for his pocket while at the same time pulling away and stepping away from his bicycle and away from [Officer Peinado]." The officer wrapped his arms around appellant and "took him to the ground." Immediately after hitting the ground, Officer Peinado saw a syringe and a pocket knife on the ground next to appellant.

Appellant "took a swing at [Officer Peinado] with a closed fist, and . . . [the officer] threw punches back." Appellant was "flail[ing] his legs and his arms." Officer Peinado "felt pressure

---

[4] On cross-examination, defense counsel asked Officer Peinado if he remembered testifying at a prior hearing (on appellant's motion to dismiss under section 1538.5) that he grabbed appellant's wrist and placed it behind his back *before* appellant threw his hands in the air. After refreshing his recollection with a portion of the reporter's transcript of the prior hearing, Officer Peinado reiterated that he did not grab appellant's wrist until after appellant threw his arms up.

3

and tugging on the left side of [his] duty belt" where his firearm was holstered. To better control appellant, Officer Peinado turned him onto his stomach and "pinned [him] to the ground." Appellant bit Officer Peinado's right hand and the officer "began striking [appellant] again." Appellant "roll[ed] . . . onto his back and continu[ed] fighting and swinging, [with] closed fists." The officer "then switched from punches, because they were ineffective, to elbows."

Officer Peinado "threw about three elbows, [but appellant] continued to resist." The "elbow strikes" were to appellant's head. Other officers arrived on the scene and handcuffed appellant. Officer Peinado suffered "a bite wound to [his] right hand," cuts and scrapes to his hands, and scrapes to both knees.

The incident was recorded by the dashboard video camera (dash cam) in Officer Peinado's patrol vehicle. The video footage was admitted into evidence and shown to the jury, and was also provided to the jury to review during its deliberations.[5]

The video shows appellant slowly riding a bicycle on an empty sidewalk bordered by an empty street on one side and an empty park on the other. No pedestrians are present. It is a bright, sunny day. Appellant is wearing a tank top and knee-length shorts. He stops when the patrol vehicle pulls up near him. Officer Peinado gets out of the vehicle and says, "You're riding on the sidewalk." The officer approaches appellant and

---

[5] The initial physical contact between Peinado and appellant occurred very rapidly, within a matter of a few seconds. We stopped the video at various points so we were able to view it frame by frame. The jury could have done the same when it watched the video during its deliberations.

4

asks whether he is on probation or parole. Appellant replies that he is on probation. Officer Peinado orders appellant to put his "hands back here," apparently indicating that appellant should put his hands behind his back. (At this point Officer Peinado is standing with his back toward the camera, and his body is blocking the dash cam's view of appellant.) Appellant protests: "Why? What did I do? What did I fucking do?" Officer Peinado responds, "You're riding on the sidewalk." Appellant throws both arms up in the air above his head, quickly brings both arms back down, and says, "Bullshit, man! What the fucking shit is that?" With his left hand, Officer Peinado grabs appellant's left wrist. Appellant starts to walk away and puts his right hand inside his right pants pocket. Officer Peinado says, "Hey, don't be reaching for that!" With his right hand, the officer grabs appellant's right upper arm. Appellant removes something from his right pants pocket and brings his right hand up to his mouth.[6] Officer Peinado, who apparently cannot see what appellant is doing with his right hand because he is standing behind him, puts both his arms around appellant and takes him to the ground.

As appellant is lying on his back with Officer Peinado on top of him, he flails his legs and takes a swing at the officer with his right hand. Officer Peinado punches appellant several times while appellant is wildly moving his arms. Appellant reaches for Officer Peinado's head and makes contact with his head. The camera's view of appellant is then blocked by Officer Peinado's patrol vehicle. Appellant yells, "Hey, you shit, get off me!" Appellant and Officer Peinado continue to struggle on the ground

---

[6] From what is shown on the video, it is reasonable to infer that appellant removed contraband from his pants pocket and tried to conceal it by putting it inside his mouth.

until two other officers arrive and assist in handcuffing appellant.

A second video was recorded on the dash cam in one of the patrol vehicles that arrived in response to Officer Peinado's call for assistance. The video shows Officer Peinado and appellant on the ground fighting each other.

Appellant did not testify and did not call any witnesses.

## DISCUSSION

### *Sufficiency of the Evidence*

Appellant contends the evidence is insufficient to support his conviction under section 69. We disagree.

In reviewing claims of insufficient evidence, we must determine ""'whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." [Citation.] "[T]he court must review the whole record in the light most favorable to the judgment below to determine whether it discloses substantial evidence—that is, evidence which is reasonable, credible, and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt." [Citation.] We "'presume in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence.""'" (*People v. Osband* (1996) 13 Cal.4th 622, 690, brackets in original.)

If ""'"the circumstances reasonably justify the trier of fact's findings, the opinion of the reviewing court that the circumstances might also reasonably be reconciled with a contrary finding does not warrant a reversal of the judgment.""'" (*People v. Rodriguez* (1999) 20 Cal.4th 1, 11.) A jury is best able to evaluate inconsistencies in testimony, in order to determine

6

which facts have been shown to be true.  (See *People v. Barnes* (1986) 42 Cal.3d 284, 306.)  A single witness's testimony may be sufficient to support a conviction unless it must be rejected because the events described were impossible or inherently improbable.  (*People v. Young* (2005) 34 Cal.4th 1149, 1181.)  A defendant may not reargue the evidence on appeal, and we do not reassess witness credibility.  (*People v. Thompson* (2010) 49 Cal.4th 79, 124-125.)

Section 69 provides that it is a crime to "knowingly resist[], by the use of force or violence, [an executive] officer, in the performance of his or her duty."  The statute "requires that the officer was acting lawfully at the time of the offense."  (*People v. Smith* (2013) 57 Cal.4th 232, 241 (*Smith*).)  "An officer using excessive force is not acting lawfully."  (*People v. Sibrian* (2016) 3 Cal.App.5th 127, 133.)  "The reasonableness of a particular use of force is judged from the perspective of a reasonable officer on the scene, not by the 20/20 vision of hindsight.  The inquiry is an objective one: Was the officer's action objectively reasonable in light of the facts and circumstances confronting him, without regard to his underlying intent or motivation?"  (*In re Joseph F.* (2000) 85 Cal.App.4th 975, 989.)  In making this determination, "the jury's task not only permitted but required it to apply its own independent sense of reasonableness, using whatever community norms jury members might bring to the issue." (*Brown, supra,* 245 Cal.App.4th at p. 167.)

The evidence, viewed in the light most favorable to the judgment, is sufficient to support appellant's conviction under section 69.  Officer Peinado had observed appellant commit a traffic infraction, so he had the right to stop and detain him for an investigation.  (*People v. Miranda* (1993) 17 Cal.App.4th 917,

7

926.) Officer Peinado testified that he ordered appellant to place his hands behind his back because appellant was agitated, the officer could not see both of appellant's hands, appellant said he was on probation, and appellant was "look[ing] into another area as if he's looking for a place to run." Appellant's back was to the officer and he was standing over his bicycle in a position where he could easily ride away. In light of this evidence, the jury could reasonably find that Officer Peinado's brief placement of his hand on appellant's back, combined with the command that appellant place his hands there, did not amount to an unreasonable or excessive use of force.

The jury could also find that Officer Peinado used reasonable force when he grabbed appellant's left wrist. Officer Peinado testified that he took this action after appellant, while cursing at the officer, rapidly raised both of his hands in the the air and immediately brought them back down. In light of this evidence, the jury could find that Officer Peinado had legitimate safety concerns such that it was reasonable for him to secure appellant's hands. Contrary to appellant's claim, the dash cam footage from Officer Peinado's vehicle does not actually show the officer grabbing appellant's hand before he threw it up in the air. During that part of the encounter, the officer's back is to the dash cam and his hands cannot be seen. Although the defense asserted that Officer Peinado grabbed appellant's hand immediately notwithstanding his claim to the contrary, it was the sole province of the jury to make this credibility determination. (*People v. Thompson, supra,* 49 Cal.4th at pp. 124-125.)

Moreover, the jury could reasonably find that when appellant started to walk away and put his right hand in his pants pocket, Officer Peinado had grounds to reasonably fear that

8

appellant was attempting to retrieve a weapon and escape from the detention. (See *People v. Parrott* (2017) 10 Cal.App.5th 485, 494 ["asking appellant to keep his hands out of his pockets is a normal, expected response to an officer's concern for his or her own personal safety during the encounter"].) A reasonable trier of fact could find that Officer Peinado used reasonable force to constrain appellant by taking him to the ground. Since appellant struggled with the officer on the ground, bit his hand, and apparently tried to remove the gun from the officer's holster, a reasonable trier of fact could also find that Officer Peinado used reasonable force to subdue appellant and protect himself until other officers arrived. We also reject appellant's claim that, as a matter law, his "response [to Officer Peinado's use of force] was in self-defense and reasonable."

In his briefs, appellant refers us to comments made by the judge who denied his motion to dismiss under section 1538.5. After reviewing the dash cam footage, the judge observed that at the outset of the encounter appellant did not exhibit aggressive behavior and there were "[n]o furtive movements" and "no threats of any violence [or] anything." The judge stated: "[W]ould a reasonable person . . . believe that the officer had to put hands on [appellant] to detain him? . . . I just don't see that [as] justified."

The judge went on to state: "I don't see the nexus between what the officer did and an unlawful search. What I see is a defense possibly that the officer used excessive force in detaining which is a defense for [a charge under section] 148 and maybe a [charge under section] 69." The judge also declined appellant's request for a finding "that the grabbing of [appellant] was an unlawful contact." The court reasoned that "[t]he record of what

9

I have said and my observations and how I interpret it is how I interpret it. Could the officer interpret it differently? Did he see things I didn't see? Was he in a situation I wasn't in? Sure. So I'm not going to make any factual determinations." The judge thus recognized that the reasonableness of Officer Peinado's use of force was ultimately an issue of fact to be decided by the jury based on the evidence presented at trial.

Moreover, the magistrate who held appellant to answer on the section 69 charge at the conclusion of the preliminary hearing observed: "One wonders if there might have been better ways to approach it, but the agitation of the defendant is plain upon the approach of the officer. *And his actions all seem to me to be within the lawful scope of his duties, and the resistance was immediate and forceful.*" (Italics added.)

These conflicting views merely demonstrate that the evidence is susceptible to differing interpretations. It does not undermine the conclusion that appellant's conviction is supported by substantial evidence. (*People v. Rodriguez, supra,* 20 Cal.4th at p. 11.)

### Failure To Instruct On Lesser Included Offense Of Simple Assault (§ 240)

The information charged appellant with "knowingly resist[ing] by the use of force and violence" Officer Peinado's performance of his duties. Based on the information (accusatory pleading), the People concede that simple assault, which is defined as "an unlawful attempt, coupled with a present ability to commit a violent injury on the person of another" (§ 240), was a lesser offense necessarily included within the charged offense of violating section 69. (See *Brown, supra,* 245 Cal.App.4th at p. 153 [because accusatory pleading charged defendant with

10

violating section 69 by "knowingly resisting the officers with force and violence," simple assault was lesser included offense].)[7] Appellant argues that the trial court committed prejudicial error by failing to instruct the jury sua sponte on simple assault. We agree.

"""California law has long provided that even absent a request, and over any party's objection, a trial court must instruct a criminal jury on any lesser offense 'necessarily included' in the charged offense, if there is substantial evidence that only the lesser crime was committed. This venerable instructional rule ensures that the jury may consider all supportable crimes necessarily included within the charge itself, thus encouraging the most accurate verdict permitted by the pleadings and the evidence." [Citation.] "[T]he rule prevents either party, whether by design or inadvertence, from forcing an all-or-nothing choice between conviction of the stated offense on the one hand, or complete acquittal on the other. Hence, the rule encourages a verdict, within the charge chosen by the prosecution, that is neither 'harsher [n]or more lenient than the evidence merits.' [Citations.]" [Citation.] Thus, "a trial court

---

[7] See *People v. Reed* (2006) 38 Cal.4th 1224, 1227-1228: "We have applied two tests in determining whether an uncharged offense is necessarily included within a charged offense: the 'elements' test and the 'accusatory pleading' test. Under the elements test, if the statutory elements of the greater offense include all of the statutory elements of the lesser offense, the latter is necessarily included in the former. Under the accusatory pleading test, if the facts actually alleged in the accusatory pleading include all of the elements of the lesser offense, the latter is necessarily included in the former."

errs if it fails to instruct, sua sponte, on all theories of a lesser included offense which find substantial support in the evidence. On the other hand, the court is not obliged to instruct on theories that have no such evidentiary support.'" [Citation.]" (*Brown*, *supra*, 245 Cal.App.4th at p. 152.) "'"'We apply the independent or de novo standard of review to the failure by the trial court to instruct on an assertedly lesser included offense. [Citation.]'" [Citation.]' [Citation.]" (*Ibid*.)

Upon our independent review, we conclude that substantial evidence supported an instruction on the lesser included offense of simple assault. The primary disputed issue in this case was whether Officer Peinado used unreasonable or excessive force during the encounter such that he was not acting within the lawful scope of his official duties. Although we have concluded that the jury could reasonably find the officer did *not* use unreasonable or excessive force, this is one of those cases in which "'"'the circumstances might also reasonably be reconciled with a contrary finding . . . .'"'" (*People v. Rodriguez, supra*, 20 Cal.4th at p. 11.) The jury could have rejected Officer Peinado's proffered explanations for his behavior. The officer's actions and purported observations, as reflected in his testimony and depicted on the dash cam footage, are susceptible to differing interpretations. For example, the jury could have rejected as incredible Officer Peinado's assertion that he did not grab appellant's left hand until after he threw it up into the air; indeed, the judge who adjudicated appellant's suppression motion rejected that assertion based on the officer's testimony at the suppression hearing and a review of the dash cam footage.

The jury also could have found that Officer Peinado overreacted when he wrapped his arms around appellant's waist

12

and threw him to the ground, and that the officer subsequently used unreasonable or excessive force when he repeatedly hit appellant with his fists and elbows.  Alternatively, the jury could have found that Officer Peinado used unreasonable or excessive force at the outset of the encounter—either by immediately grabbing appellant's left hand, or by tapping him on the back and ordering him to place both of his hands there—and that this action was the catalyst for everything that followed, such that the officer could not be said to have been lawfully acting within the scope of his official duties.  In other words, "the jury could . . . have concluded that [appellant] used excessive force or violence to resist [Officer Peinado] only in response to the officer['s] unreasonable [use of] force.  Under that scenario, [appellant] could have been found not guilty of the section 69 violation, but still guilt of the lesser crime of assault." (*Brown, supra*, 245 Cal.App.4th at p. 154.)

We also conclude that the error in failing to instruct on simple assault was prejudicial.  "'"[T]he failure to instruct sua sponte on a lesser included offense in a noncapital case is, at most, an error of California law alone, and is thus subject only to state standards of reversibility." [Citation.]  Under the state standard, "such misdirection of the jury is not subject to reversal unless an examination of the entire record establishes a reasonable probability that the error affected the outcome." [Citations.]  "The Supreme Court has emphasized 'that a "probability" in this context does not mean more likely than not, but merely a *reasonable chance,* more than an *abstract possibility*.  [Citations.]' [Citation.]'" [Citation.]" (*Brown, supra*, 245 Cal.App.4th  at p. 155.)

13

We conclude there is a reasonable probability that the error affected the outcome of this case. "The use of excessive force was a primary defense theory at trial and there was substantial evidence to support it. But the instructional error precluded the jury from finding that [Officer Peinado] used excessive force, while convicting [appellant] of assault . . . whether he intended to cause injury or not. A 'jury without an option to convict a defendant of a lesser included offense might be tempted to convict the defendant of an offense greater than that established by the evidence instead of rendering an acquittal.' [Citation.]" (*Brown*, *supra*, 245 Cal.App.4th at pp. 154-155.)

The People contend that any error in failing to instruct on simple assault was harmless because "the jury was fully instructed that an officer is not lawfully performing his or her duties if he or she is using unreasonable or excessive force. [Citation.] Thus, in finding appellant guilty of violating section 69, the jury implicitly rejected appellant's defense that Officer Peinado used unreasonable or excessive force." In assessing prejudice in this context, however, "'it does not matter that the jury chose to convict the defendant of the greater offense over acquittal or that the defendant was convicted of the greater offense on sufficient evidence.' [Citation.] To hold otherwise would undermine the very purpose of the sua sponte rule. [Citation.]" (*Brown*, *supra*, 245 Cal.App.4th at p. 155; see also *Hayes*, *supra*, 142 Cal.App.4th at p. 182, citations and internal quotation marks omitted [recognizing that the failure to instruct on a lesser included offense may be deemed harmless when the factual questions posed by the omitted instructions were necessarily resolved against the defendant "*in another context*"].)

14

The error in this case particularly illustrates this point. As we have noted, appellant's primary defense to the section 69 charge was that Officer Peinado used unreasonable or excessive force and thus was not acting within the scope of his official duties. Appellant also asserted that his use of force in response to the officer's actions was reasonable. On that issue, the jury was instructed pursuant to CALCRIM No. 2670 that "[i]f a peace officer uses unreasonable or excessive force while detaining or attempting to detain a person, that person may lawfully use reasonable force to defend himself or herself. [¶] A person being arrested uses reasonable force when he or she: (1) uses that degree of force that he or she actually believes is reasonably necessary to protect himself or herself from the officer's use of unreasonable or excessive force; and (2) uses no more force than an reasonable person in the same situation would believe is necessary for his or her protection."

Although these instructions made clear that appellant had the right to use *reasonable* force in response to unreasonable or excessive force, it is also clear by implication that appellant could not himself use unreasonable or excessive force. The instructions, however, did not provide any guidance on how the jury should proceed if it found that Officer Peinado had used unreasonable or excessive force (and thus was not acting within his official duties), but that appellant also responded with unreasonable or excessive force. Although the instructions further stated that appellant could not be found guilty of violating section 69 if Officer Peinado had used excessive or unreasonable force, appellant was plainly guilty of *something* if he also responded with the use of such force. But the jury was given the option of convicting appellant of only one crime—

15

resisting an executive officer in violation of section 69.  Because the jury was not given the option of convicting appellant of a lesser offense, it may have been "'tempted to convict [him] of an offense greater than that established by the evidence instead of rendering an acquittal.'  [Citation.]"  (*Brown, supra*, 245 Cal.App.4th at p. 155.)

Because it is reasonably probable that the error in failing to instruct on the lesser included offense of simple assault affected the outcome of the case, appellant's conviction under section 69 must be reversed.  "'When a greater offense must be reversed, but a lesser included offense could be affirmed, we give the prosecutor the option of retrying the greater offense, or accepting a reduction to the lesser offense.'  [Citations.] On remand we will provide the prosecution with the option of retrying the section 69 charge along with a charge of simple assault."  (*Brown, supra*, 245 Cal.App.4th at p. 156.)

### *Failure To Instruct On Lesser Included Offense Of Willfully Resisting A Peace Officer (§ 148, subd. (a)(1))*

Section 148, subdivision (a)(1) (section 148(a)(1)) makes it a crime to "willfully resist[], delay[], or obstruct[] any . . . peace officer . . . in the discharge or attempt to discharge any duty of his or her office."  (*Ibid.*)  The People concede that, based on the information, a violation of section 148(a)(1) was a lesser offense necessarily included within the charged offense of violating section 69.  (*Smith, supra*, 57 Cal.4th at p. 241 ["A person who violates section 69 . . . by 'knowingly resist[ing], by the use of force or violence, such officer, in the performance of his duty' . . . also necessarily violates section 148(a)(1) by 'willfully resist[ing] . . . any public officer . . . in the discharge or attempt to discharge any duty of his or her office or employment'"].)  The difference

16

between the two offenses is that a violation of section 69 requires the use of force or violence, while a violation of section 148(a)(1) does not.

Appellant claims that the trial court erred in not instructing the jury sua sponte on a violation of section 148(a)(1). "[W]e conclude the failure to instruct with section 148, subdivision (a)[(1)] here was not error because there was no substantial evidence that would support a conviction of the lesser offense." (*People v. Carrasco* (2008) 163 Cal.App.4th 978, 985.) "[I]f appellant resisted the officer[] at all, he did so forcefully, thereby ensuring no reasonable jury could have concluded he violated section 148, subdivision (a)(1) but not section 69." (*Ibid*.)

### CALCRIM No. 2670

The trial court gave CALCRIM No. 2670 on whether a peace officer is lawfully performing his duties. Appellant maintains that the trial court erroneously refused to give the following bracketed portion of the standard instruction: "[Y]ou may not find the defendant guilty of resisting arrest if the arrest was unlawful, even if the defendant knew or reasonably should have known that the officer was arresting him."

The trial court did not err. Appellant was not charged with resisting arrest. The lawfulness of his arrest was not in question.

Appellant contends that the trial court should have substituted "detention" for "arrest" and given the omitted instruction as so modified. The trial court considered this modification but reasonably rejected it because the court had previously found the detention lawful and appellant had acquiesced in this finding. In his opening brief appellant states: "Appellant conceded [in the trial court that] he was initially lawfully detained. Use of excessive force at the time Officer

17

Peinado was effectuating the detention was appellant's theory of defense." Moreover, at a pretrial section 1538.5 motion to suppress evidence, the court ruled, "[T]here's no doubt that he was lawfully detained."

Appellant asserts, "The trial court should have included the requested language and clarified to the jury that an officer's use of excessive force in effectuating a lawful detention is unlawful and they may not find the defendant guilty of resisting in response to the excessive force." But the jury in effect was so instructed pursuant to CALCRIM No. 2670. The instruction as given stated: "A peace officer is not lawfully performing his or her duties if he or she is using unreasonable or excessive force in his or her duties. . . . If a peace officer uses unreasonable or excessive force while detaining or attempting to detain a person, that person may lawfully use reasonable force to defend himself or herself." In view of this instruction, we reject appellant's claim that "[t]he trial court's instructions misled the jury to understand that an initial lawful detention remained lawful even if Officer Peinado used excessive force."

Appellant claims that the trial court erred in instructing on when "[a] person being *arrested* uses reasonable force." The court should have substituted "detained" for "arrested." But the use of the word "arrested," instead of "detained," could not have affected the verdict. The jury must have understood that the principle set forth in the instruction also applied to detentions. Other parts of CALCRIM No. 2670 as given used "arrest" and "detain" interchangeably: "A peace officer may use reasonable force to *arrest or detain* someone . . . ." "If a person knows . . . that a peace officer is *arresting or detaining* him or her, the person must not use force or any weapon to resist an officer's use of reasonable

18

force."  (Italics added.)  "We credit jurors with intelligence and common sense [citation] and do not assume that these virtues will abandon them when presented with a court's instructions." (*People v. Sandoval* (2020) 50 Cal.App.5th 357, 361.)

### Jury Instruction on Graham *Factors*

Appellant maintains that the trial court erred in refusing his request to instruct on factors to be considered in determining whether a peace officer used excessive force.  The factors, referred to as "*Graham* factors," derive from *Graham v. Connor* (1989) 490 U.S. 386 [104 L.Ed.2d 443] (*Graham*).  There, the plaintiff brought an action under section 1983 of Title 42 of the United States Code (section 1983) "to recover damages for injuries allegedly sustained when law enforcement officers used physical force against him during the course of an investigatory stop." (*Graham*, at p. 388.)  The plaintiff claimed that the officers had used excessive force.

"Section 1983 provides a cause of action for 'the deprivation of any rights, privileges, or immunities secured by the Constitution and laws' of the United States."  (*Wilder v. Virginia Hospital Assn* (1990) 496 U.S. 498, 508 [110 L.Ed.2d 455].)  In *Graham* the Court held, "Where . . . the excessive force claim [under section 1983] arises in the context of an arrest or investigatory stop of a free citizen, it is most properly characterized as one invoking the protections of the Fourth Amendment, which guarantees citizens the right 'to be secure in their persons . . . against unreasonable . . . seizures' of the person."  (*Graham*, *supra*, 490 U.S. at p. 394.)  The Court noted that the "proper application" of the "'test of reasonableness under the Fourth Amendment . . .' . . . requires careful attention to the facts and circumstances of each particular case, including [1] the

19

severity of the crime at issue, [2] whether the suspect poses an immediate threat to the safety of the officers or others, and [3] whether he is actively resisting arrest or attempting to evade arrest by flight." (*Id*. at p. 396.)

Appellant requested that the trial court give an instruction incorporating the above three *Graham* factors.[8]  His counsel said that the proposed instruction "comes right out of *Graham* [*v*.] *Connor*."  In denying the request, the court said, "I'm inclined to . . . leave this trial with the CALCRIM [instructions] the way that I get [them]."

Appellant has not shown that the trial court prejudicially erred in declining to give his proposed instruction.  Appellant was charged with a criminal violation of section 69.  His claim of excessive force did not invoke the protections of the Fourth Amendment.  Nothing in *Graham* requires the giving of a special instruction incorporating the three *Graham* factors where, as here, the jury in a criminal case is properly instructed pursuant to CALCRIM No. 2670.

Moreover, the proposed instruction focused on just three factors.  *Graham* concluded that, in determining whether officers used excessive force, the trier of fact must consider the totality of the circumstances from the officer's perspective:  "[T]he question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them . . . ."  (*Graham*,

_____

[8] The proposed instruction stated:  "'When evaluating reasonable versus excessive force, you should consider factors including, one, the severity of the crime at issue; two, whether the suspect posed an immediate threat to the safety of the officers or others; and [three], whether the suspect was actively resisting arrest or attempting to evade arrest by flight.'"

20

*supra*, 490 U.S. at p. 397.) "The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." (*Id*. at pp. 396-397.) Accordingly, any error in failing to give the requested instruction was harmless.

## Pitchess

"[T]he Legislature has enacted procedures to implement the decision of *Pitchess v. Superior Court* (1974) 11 Cal.3d 531 . . . (*Pitchess*) that allow criminal defendants to seek discovery from the court of potentially exculpatory information located in otherwise confidential peace officer personnel records. If a party bringing what is commonly called a *Pitchess* motion makes a threshold showing, the court must review the records in camera and disclose to that party any information they contain that is material to the underlying case. (See Evid. Code, §§ 1043, 1045.)" (*People v. Superior Court (Johnson)* (2015) 61 Cal.4th 696, 705.)

Appellant filed a *Pitchess* motion seeking discovery of the following information: "Any evidence or complaints of: (1) unnecessary or excessive force; (2) unlawful searches; (3) unlawful arrests; (4) racial or identity profiling; and (5) any other evidence or complaints of dishonesty or misconduct by . . . Officer Ruben Peinado."

Appellant also served a subpoena duces tecum requiring the police department to produce a copy of "Peinado's 'Blue File' or 'Blue Team' log." Appellant explained that this file or log contains "a list of all use of force incidents known within the department." It is maintained "for statistical and training purposes." "The Blue File log is not limited to incidents where

21

force was deemed excessive . . . . It is not limited to incidents where formal complaints were filed or where an internal investigation was conducted and wrong-doing was found. . . . The Blue File tracks *all* incidents when officers use force."

The police department claimed that the Blue File "is an extension of the officer's personnel file" and that its discovery "is a *Pitchess* issue." The trial court agreed. It granted the police department's motion to quash the subpoena duces tecum because the subpoena was "not the appropriate method to obtain the documents." But the court concluded that the Blue File is "properly subject to a *Pitchess* motion," so it considered the Blue File as part of appellant's *Pitchess* motion.

The court conducted two separate in camera hearings during which it inspected confidential police records and heard testimony concerning the discovery sought by appellant.[9] The police records and transcripts of the hearings are sealed. The court ordered the police department to disclose information "regarding an alleged complaint of racial profiling." In addition, it required disclosure of an incident from the Blue File where Peinado had used force but no citizen complaint was filed and no internal affairs investigation was conducted.

Appellant has requested "that this Court of Appeal conduct an independent review of the reporter's transcript of the in camera hearings . . . in order to determine for itself whether any police personnel record documents were incorrectly withheld."

---

[9] The hearing dates were November 29, 2018, and February 19 and 28, 2019. The trial court considered the February 28 hearing to be "a continuation of the previous" February 19 hearing.

We review the trial court's ruling for abuse of discretion. (*People v. Prince* (2007) 40 Cal.4th 1179, 1285.)

After reviewing the sealed transcripts of the in camera hearings and the police records submitted to the court during these hearings, we are satisfied that the trial court did not abuse its discretion. (See *People v. Samayoa* (1997) 15 Cal.4th 795, 827 ["Our independent in camera review . . . reveals no materials so clearly pertinent to the issues raised by the *Pitchess* discovery motion that failure to disclose them was an abuse of *Pitchess* discretion"].)

## DISPOSITION

The judgment is conditionally reversed. If, after the filing of the remittitur in the trial court, the People do not bring appellant to retrial on the charged offense (§ 69) as provided in section 1382, subdivision (a)(2), the trial court shall proceed as if the remittitur modified the judgment to reflect a conviction of the lesser included offense of simple assault in violation of section 240, and resentence appellant accordingly. (*Hayes, supra,* 142 Cal.App.4th at p. 184; *Brown, supra,* 245 Cal.App.4th at p. 173.)

NOT TO BE PUBLISHED.



PERREN, J.


I concur:



GILBERT, P. J.


23

YEGAN, J.,

I respectfully dissent from the majority's determination that the trial court erroneously failed to instruct sua sponte on the lesser included offense of simple assault. There is no evidence from which a reasonable trier of fact could conclude "'that the lesser offense, but not the greater [a violation of Penal Code section 69], was committed.'"[10] (*People v. Castaneda* (2011) 51 Cal.4th 1292, 1327-1328 (*Castaneda*).)

"[I]f the officer is not acting within the scope of his duties because of his use of excessive force, the defendant may still be guilty of simple [assault or] battery if he responds with excessive force." (*People v. Castain* (1981) 122 Cal.App.3d 138, 145.) Therefore, the question before us is twofold: First, is there substantial evidence that Officer Peinado used excessive force so that a reasonable trier of fact could find that appellant had not violated section 69? Second, if there is such substantial evidence, is there also substantial evidence that appellant used excessive force in response to Peinado's use of excessive force so that a reasonable trier of fact could find that appellant had committed simple assault?

We need not reach the second question. Based on Peinado's testimony and the video, there is no substantial evidence that he used excessive force before appellant completed his violation of section 69. The majority states, "[T]he jury could have rejected as incredible Officer Peinado's assertion that he did not grab appellant's left hand until after he threw it up into the air." (Maj. opn. *ante*, at p. 12.) But the video shows that Peinado grabbed appellant's left hand after appellant had raised both hands above

---

[10] All statutory references are to the Penal Code.

his head and said, "Bullshit, man." The majority observes, "Contrary to appellant's claim, the dash cam footage from Officer Peinado's vehicle does not actually show the officer grabbing appellant's hand before he threw it up in the air." (*Id.*, at p. 8.)

The majority continues, "[T]he jury could have found that Officer Peinado used unreasonable or excessive force at the outset of the encounter—either by immediately grabbing appellant's left hand, or by tapping him on the back and ordering him to place both of his hand there . . . ." (Maj. opn. *ante*, at p. 13.) Officer Peinado did not "immediately" grab appellant's left hand. No reasonable juror could find that Peinado used excessive force by tapping appellant in the small of the back to indicate that he should put his hands there. This act involved de minimis force. The act was justified by Peinado's concern for his safety. Peinado explained that he "wanted [appellant's] hand[s] in the small of his back so [Peinado] could control him." During closing argument to the jury, defense counsel said: "[T]o an officer where somebody's hands are is very important. If they can't see their hands, there could be a threat." In its statement of facts the majority notes, "[T]he officer could not see both of appellant's hands, and appellant appeared to be looking around for an escape route." (*Id.*, at p. 3.)

The majority asserts, "The jury also could have found that Officer Peinado overreacted when he wrapped his arms around appellant's waist and threw him to the ground . . . ." (Maj. opn. *ante*, at p. 13.) As I explain below, it was appellant, not Peinado, who overreacted.

Officer Peinado's encounter with appellant was not the usual encounter between a police officer and a private citizen stopped for an infraction. Appellant informed Peinado that he

2

was on probation for a criminal offense. Peinado did not know the nature of the offense, which could have been violent. Appellant had an intimidating presence. He was wearing a tank top that displayed his brawny, powerful physique. Appellant's offense – riding a bicycle on the sidewalk – was minor, no more serious than jaywalking. It would not have resulted in the revocation of his probation. But appellant went ballistic. He was belligerent and foul-mouthed. Appellant implored, "What did I do? What did I fucking do?" Peinado responded, "You're riding on the sidewalk." Peinado threw both arms up in the air and shouted: "Bullshit, man! What the fucking shit is that?"

Appellant started to walk away and put his right hand inside his right pants pocket. Peinado said, "Hey, don't be reaching for that!" Appellant disobeyed the command. He kept his hand inside his pocket and kept walking away. The majority acknowledges, "the jury could reasonably find that when appellant started to walk away and put his right hand in his pants pocket, Officer Peinado had grounds to reasonably fear that appellant was attempting to retrieve a weapon and escape from the detention." (Maj. opn. *ante*, at pp. 8-9.) The fear of a weapon was particularly reasonable in view of appellant's hostility and Peinado's lack of knowledge whether appellant was on probation for a violent offense. Peinado was unable to determine whether appellant was armed.

What was Officer Peinado supposed to do at this point? He had to make a split-second judgment. "In calculating whether the amount of force was excessive, a trier of fact must recognize that peace officers are often forced to make split-second judgments, in tense circumstances, concerning the amount of force required." (*Brown v. Ransweiler* (2009) 171 Cal.App.4th

3

516, 528.) Peinado testified that he took appellant to the ground "[t]o prevent him from continuing to reach inside his pocket and potentially pull out some sort of weapon that he would use against me." There is no evidence that the takedown injured appellant. Thus, a reasonable trier of fact could not find that Peinado had used excessive force in executing the takedown. "[O]fficers are not required to treat [resisting and belligerent] detainees as gently as possible." (*Blazek v. City of Iowa City* (8th Cir. 2014) 761 F.3d 920, 926.)

Appellant landed on his back. Peinado was on top of him. With his right closed fist, appellant immediately swung at Peinado's head and missed. The swing is shown on the video. Peinado testified: "[Appellant] took a swing at me with a closed fist, and at that time I started to attempt to control him and I threw punches back." In describing the content of the video, the majority states: "As appellant is lying on his back with Officer Peinado on top of him, he flails his legs and takes a swing at the officer with his right hand. Officer Peinado punches appellant several times while appellant is wildly moving his arms." (Maj. opn. *ante*, at p. 5.) The majority concludes that the jury could have reasonably found that Peinado had "used unreasonable or excessive force when he repeatedly hit appellant with his fists and elbows." (*Id*., at p. 13.)

If Officer Peinado used excessive force after appellant had swung at his head, the use of such force does not constitute substantial evidence from which a reasonable trier of fact could conclude "'that the lesser offense [simple assault], but not the greater [violation of section 69], was committed.'" (*Castaneda*, *supra*, 51 Cal.4th at pp. 1327-1328.) Before Peinado hit appellant and while Peinado was acting lawfully, the violation of section 69

4

was completed when appellant swung at Peinado's head. Peinado's subsequent use of excessive force would not absolve appellant from liability for his initial assault. In *People v. Williams* (2018) 26 Cal.App.5th 71, 73, the court held, "[I]f a defendant delays, obstructs, or resists an officer who is engaged in the lawful performance of his or her duties, the defendant may be convicted of violating section 148(a)(1) even if the officer uses excessive force subsequent to the completed violation." The same rule should apply when a defendant is charged with violating section 69. The California Supreme Court explained: "'[A] defendant might resist a lawful arrest, to which the arresting officers might respond with excessive force to subdue him. The subsequent use of excessive force would not negate the lawfulness of the initial arrest attempt, or negate the unlawfulness of the criminal defendant's attempt to resist it. Though occurring in one continuous chain of events, two isolated factual contexts would exist, the first giving rise to criminal liability on the part of the criminal defendant, and the second giving rise to civil liability on the part of the arresting officer.'" (*Yount v. City of Sacramento* (2008) 43 Cal.4th 885, 899; see also *Williams*, at p. 87 ["Logically, the use of excessive force after a defendant's completed section 148(a)(1) offense should not provide a basis for finding the defendant did not violate section 148(a)(1)"].)

Accordingly, I would affirm the judgment.

NOT TO BE PUBLISHED.

YEGAN, J.

5

James F. Rigali, Judge
Superior Court County of Santa Barbara

_____

Nancy Wechsler, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Scott A. Taryle, Supervising Deputy Attorney General, Chung L. Mar, Deputy Attorney General, for Plaintiff and Respondent.